ORIGINAL

FILED
JUL 9 2008
U.S. COURT OF FEDERAL CLAIMS

UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| Deloitte Consulting, LLP, | ) | |
| Plaintiff, | ) | 08-492 C |
| | ) | Case No. ______ |
| v. | ) | |
| | ) | Judge ______ |
| The United States, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Deloitte Consulting LLP ("Deloitte") respectfully submits this Memorandum in Support of its Application for Temporary Restraining Order and Motion for Preliminary Injunction.[1]

## I. INTRODUCTION AND SUMMARY OF DELOITTE'S POSITION

In this post-award contract case, Deloitte challenges DOL's "override" of the automatic stay that took effect by virtue of 31 U.S.C. § 3553(d)(3) and (4) upon the filing of Deloitte's Bid Protest in the U.S. Government Accountability Office on June 30, 2008. Compl. ¶¶ 2.[2] A copy of the override "Findings and Determination" document is attached to the Verified Complaint as Exhibit A. Pursuant to this override determination, unless this Court orders otherwise DOL will

[1] As noted in our Motion for a Preliminary Injunction, Deloitte suggests that the Court advance and consolidate the hearing on the merits with the hearing on Deloitte's Motion for a Preliminary Injunction.

[2] The reference "Compl. ¶ _____" refers to the Verified Complaint for Injunctive and Declaratory Relief filed in this action.

proceed with the Contract notwithstanding Deloitte's GAO Bid Protest and thereby deprive Deloitte of any meaningful relief even if GAO sustains its Bid Protest. Compl. ¶ 35.

DOL's Findings and Determination document dated July 3, 2008 purportedly finds that proceeding with the Contract notwithstanding Deloitte's Bid Protest is in the "best interests of the United States." Compl. Exh. A, unnumbered second page. Deloitte maintains that DOL's determination is arbitrary and capricious, an abuse of discretion, and contrary to law as follows:

- DOL has entirely failed to consider three of four mandatory factors that decisions of this Court hold the agency must consider in each automatic stay override case. Those factors are:
  - Reasonable alternatives to overriding the stay;
  - The costs associated with the potential that GAO might sustain Deloitte's protest, as compared to any benefits associated with proceeding with the contract; and
  - The impact of the override on competition and the integrity of the procurement system. Compl. ¶ 5.
- Regarding the first factor that this Court's decisions hold the agency must consider – whether significant adverse consequences will necessarily occur if the stay is not overridden – DOL's position is arbitrary and unsupported by the record. Specifically, so far as Deloitte can determine, DOL's October 1, 2009 "Go Live" date is not driven by any statutory time deadline or other legal mandate. In any event, DOL admits that both the NCFMS and the legacy "DOLAR$" system must continue to operate in parallel for at least six months beyond the implementation date for DOL's New Core Financial Management System ("NCFMS"). Compl. ¶ 4.

## II. FACTUAL BACKGROUND

### A. DOL's Requirement for a New Core Financial Management System

In this large Information Technology ("IT") acquisition, DOL is undertaking essentially the total replacement of its entire computerized financial management system investment. It does so to replace multiple antiquated legacy mainframe-based systems, dating to 1989, that "no longer [are] able to efficiently and effectively meet the DOL's financial management

requirements." Those legacy systems are together known as the Department of Labor Accounting and Related Systems Mainframe Accounting System ("DOLAR$"). Compl. ¶ 9 (DOL's SOO is attached as Exhibit B to the Verified Complaint.)

Efforts to replace DOLAR$ date to a 1999 study finding DOLAR$ to be significantly deficient. SOO at 1 ¶ 1.2 (Compl. Exh. A) In its longstanding efforts to replace DOLAR$, DOL has already initiated and suspended one upgrade program, namely, the former "Labor Executive Accountability Program" ("LEAP"). DOL's Office of the Chief Financial Officer had planned to implement LEAP to replace DOLAR$, with LEAP becoming DOL's financial management system of record on October 1, 2008. Due to various problems including issues with project management, concerns regarding the "direction of the program," and lack of funding for Fiscal Year 2007, the LEAP investment was suspended.. Compl. ¶ 10. *See also* Compl. Exh. C at Bates 00001 (available at http://www.dol.gov/dol/budget/2008/PDF/E300-2008-028.pdf).

DOL's SOO states that the NCFMS "must be deployed as the financial system of record on October 1, 2009." SOO at 1, 4. The SOO further states, however, that "[t]he current timeline for the NCFMS investment calls for the implementation effort to being in the fourth quarter of Fiscal Year (FY) 2008 and for the new financial system to achieve full operational capability in a hosted environment by October 1, 2009." SOO at 6, ¶ 2.3.1 (Emphasis added.) Deloitte is aware of no statutory requirement or other legal mandate that the NCFMS must "go live" by October 1, 2009. Rather, so far as Deloitte can determine October 1, 2009 is only DOL management's "current" desired date. Compl. ¶ 11. In the mean time, DOLAR$ continues to function. "With DOLAR$, DOL has received unqualified audit opinions for nine consecutive years." Compl. ¶ 29 and Exh. C Bates p. 00001.

Although DOL focuses attention on its desired current implementation date, DOL's FY 2008 and 2009 budget justifications have each stated that whenever the next generation NCFMS does "go live," in order to ensure an appropriate transition and disposition of DOLAR$, the legacy system will continue for 18 months after the NCFMS implementation. DOL has also determined that the two systems must run parallel for six months after the new system has successfully functioned prior to beginning the decommissioning of DOLAR$. Copies of the relevant budget documents are attached to this Complaint as Exhibit C. These documents were discovered on DOL's web site at the following links:

http://www.dol.gov/dol/budget/2009/PDF/E300-2009-028.pdf (See p. 1.)

http://www.dol.gov/dol/budget/2008/PDF/E300-2008-028.pdf (See p. 1)

Compl. ¶ 12.

**B. The Solicitation**

DOL issued Solicitation (RFP) No. DOL089RP20497 (the "RFP" or "Solicitation") on January 15, 2008. The RFP solicits proposals for the services of a "Financial Management Shared Service Provider" ("FM SSP") to plan, implement, manage, and host DOL's NCFMS. Compl. ¶ 13. Relevant excerpts are attached to the Verified Complaint as Exhibit D.

The Solicitation prescribes a Best Value method of award using a "two step methodology." In the first step, proposals shall be evaluated based upon various technical factors and subfactors. The RFP states: "At the conclusion of Step 1, a Competitive Range (FAR Part 15) consisting of the most highly rated proposals will be established." Compl. ¶ 12. The three top-level Evaluation Criteria for Award include Past Performance (Factor 1), Technical and Management Approach (Factor 2), and Cost (Factor 3). The Non- cost factors (Factors 1 and 2) were "comparatively equal" and each non-cost factor individually was more important than Cost (Factor 3). Compl. ¶ 13.

### C. Deloitte's Exclusion from the Competitive Range and the Immediately Ensuing Award to Global Computer Enterprises, Inc.

Deloitte submitted timely Past Performance, Technical and Management, and Cost proposals in response to the Solicitation on March 7, 2008. DOL thereafter included Deloitte in the competitive range and conducted written and oral discussions with Deloitte. Deloitte responded to written discussion questions on May 23, 2008 and attended a discussions meeting and Operational Capability Demonstration on May 27, 2008. Compl. ¶ 20. Deloitte received no further communication from DOL until being notified of its exclusion from the competitive range by letter dated June 16, 2008. Deloitte requested a debriefing, which DOL provided in a written form by letter dated June 20, 2008. Compl. ¶ 21.

Taken aback by the inaccurate content of DOL's written debriefing, on June 30, 2008 Deloitte filed a Bid Protest with the U.S. Government Accountability Office ("GAO") challenging its exclusion from the competition and the almost immediate award thereafter to Global Computer Enterprises, Inc. ("GCE"). Deloitte's Bid Protest has been docketed as B-400319.1. The Bid Protest is pending at this time. GAO is required to issue a decision not later than 100 days after the filing date, *i.e.*, by October 8, 2008. Compl. ¶ 22.

In its Bid Protest, Deloitte alleges (i) that DOL failed to follow the evaluation criteria set forth in the Solicitation, instead applying undisclosed factors and subfactors that bear no reasonable relationship to those stated in the solicitation; (ii) that DOL ignored major sections of Deloitte's proposal and responses to discussion questions, assigning baseless "weaknesses" to Deloitte for matters allegedly not addressed in the proposal or the discussions when, in fact, the proposal and discussion responses addressed such matters in comprehensive detail; (iii) that DOL failed to conduct meaningful discussions with Deloitte in a several areas; and (iv) that DOL

made award to the sole offeror remaining in the competitive range after excluding all others, without having conducted a price realism analysis. Compl. ¶ 23.

### D. The Automatic Stay and DOL's "Override"

Because DOL awarded the Contract to GCE on June 26, 2008 and Deloitte filed its Bid Protest on June 30, 2008 – *i.e.* less than ten days after the date of Contract award – under 31 U.S.C. § 3553(d)(3) and (4) an "automatic stay" took effect. Under the automatic stay provisions of the cited statute, DOL was required to "immediately direct [GCE] to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract." Compl. ¶ 24.

In response, on July 3, 2008 DOL's Procurement Executive and Head of Procuring Activity, Mr. Al Stewart, executed a "Findings and Determination" document, invoking 31 U.S.C. § 3553(d)(3)(C)(i)(I) and 48 C.F.R. § 33.104(c)(2), thus authorizing performance of the contract notwithstanding Deloitte's Bid Protest. The Findings and Determination document states that "continued and uninterrupted contract performance will be in the best interests of the United States." DOL's override determination focuses on the argument that DOL has planned for implementation of the NCFMS to be complete by October 1, 2009. Compl. ¶¶ 25; 27.

Nowhere in the Findings and Determination document does DOL's Head of Procuring Activity discuss, or even acknowledge several factors that, as discussed in the Argument below, this Court has identified as mandatory considerations in determinations to override an automatic stay. Those factors are:

- Whether reasonable alternatives to the override exist that would adequately address the circumstances presented;
- How the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare to the benefits associated with the approach being considered for addressing the agency's needs; and

- The impact of the override on competition and the integrity of the procurement system, as reflected in the Competition in Contracting Act.

Compl. ¶ 27.

Moreover, in focusing on the October 1, 2009 date the DOL override fails to acknowledge that the agency must keep DOLAR$ in operation and running in parallel with the NCFMS for at least six months beyond the "go live" date for the NCFMS. Compl. ¶ 29.

## III. ARGUMENT

### A. Jurisdiction and Standard of Review

Jurisdiction to review agency determinations overriding the automatic stay in GAO Bid Protest cases under 31 U.S.C. § 3553 is conferred by 28 U.S.C. § 1491(b)(1) (alleged violation of statute or regulation in connection with a procurement or a proposed procurement). *RAMCOR Servs. Group Inc. v. United States*, 185 F.3d 1286, 1288-89 (Fed. Cir. 1999). Jurisdiction attaches regardless whether the agency's theory of override is "urgent and compelling circumstances" or "best interests of the United States." *PGBA, LLC v. United States,* 57 Fed. Cl. 655, 659-60 (2003).

In automatic stay override cases, as in bid protests generally, the Court reviews the Government's actions to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A); *Superior Helicopter LLC v. United States*, 78 Fed. Cl. 181, 187 (2007) (judicial review in override case is governed by Administrative Procedure Act judicial review provision, 5 U.S.C. § 706); *Advanced Sys. Dev., Inc. v. United States*, 72 Fed. Cl. 25, 29-30 (2006); *PGBA, LLC,* 57 Fed. Cl. at 657. *See also, Information Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *Serco, Inc. v. United States*, No. 07-691C *et al.*, 2008 WL 623803, at *15 (Fed. Cl. Mar. 3, 2008). This standard is "highly deferential [and] . . . requires a

reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000); *Heritage of Am., LLC v. United States*, 77 Fed. Cl. 66, 71 (2007). The agency therefore must provide "a coherent and reasonable explanation of its exercise of discretion." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (citation omitted).

To prevail, the plaintiff must show that the Government's actions were either irrational – that is, arbitrary and capricious – and/or involved a clear violation of applicable statutes and regulations. *Serco*, 2008 WL 623803, at *15; *Heritage*, 77 Fed. Cl. at 70-71. In evaluating the agency's actions the Court is to undertake a "searching and careful review" of the administrative record. *Mullins v. U. S. Dep't of Energy*, 50 F.3d 990, 994 (Fed. Cir. 1995) (quoting *Federal Commc'n Comm'n v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 803 (1978)).

Moreover, in automatic stay override cases this Court has looked to U.S. Supreme Court precedent in identifying four separate grounds upon which the Court may base a holding that agency action is arbitrary and capricious:

> [I]f the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*PBGA LLC*, 57 Fed. Cl. at 657 (*quoting Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Ins. Co.*, 463 U.S. 29, 43 (1983)).

**B. <u>Criteria for Injunctive Relief</u>**

Deloitte is entitled to preliminary injunctive relief if it shows: (1) a likelihood of success on the merits, (2) irreparable injury in the absence of injunctive relief, (3) that the balance of

hardship on the parties favors the protester, and (4) that the public interest would be served by the preliminary injunctive relief. *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983); *Global Computer Enters. v. United States*, 81 Fed. Cl. 506, 507 (2008); *Hawaiian Dredging Constr. Co., Inc. v. United States*, 59 Fed. Cl. 305, 316-17 (2004); *see also Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987). "No one factor is dispositive to the court's inquiry as 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" *Serco, Inc. v. United States*, 81 Fed. Cl. 463, 501 (2008) (quoting *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)). However, the plaintiff must show that its right to injunctive relief is clear given that such relief is "relatively drastic in nature." *Id.* at 482.[3]

## C. Deloitte Has a Likelihood of Success on the Merits of this Protest.

### 1. DOL Has Failed to Consider Several Important Aspects of the Problem, Having Overlooked Three of the Four Factors that This Court's Decisions Hold Must be Considered in Every Override Case.

In stay override cases this Court has emphasized the four factors that a procuring agency must consider in deciding whether to override an automatic stay:

- Whether significant adverse consequences would occur if the agency did not override the stay;
- Whether reasonable alternatives to the override were available;
- How the benefits of overriding the stay compared to the potential cost of the override, including the costs associated with the potential that the protester might prevail before GAO; and

[3] The foregoing standards apply in the Court's analysis of both Deloitte's Application for a Temporary Restraining Order and its Motion for a Preliminary Injunction. *Global Computer Enters.*, 81 Fed. Cl. at 507; *Four Rivers Invs., Inc. v. United States*, 77 Fed. Cl. 592, 594-95 (2007).

- The impact of the override on the competition and integrity of the procurement system.

*Superior Helicopter,* 78 Fed. Cl. at 188-89; *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 711 (2006).

This Court has also determined that certain factors are "irrelevant" to the analysis and may not form a permissible basis for overriding the automatic stay prescribed in 31 U.S.C. § 3553:

- An agency's view that a new contract is better than the old one;
- An agency's preference to override the stay rather than awaiting a decision by the GAO.

*Reilly's Wholesale Produce,* 73 Fed. Cl. at 711 (improper to base override on the new contract being better than the old one); *Advanced Sys. Dev., Inc.*, 72 Fed. Cl. at 31 (agency preference to override rather than await GAO is irrelevant to the override analysis).

This Court has also noted that the foregoing four relevant factors must be examined in override cases regardless whether the agency's override determination is based upon "best interests of the United States" (31 U.S.C. § 3553(d)(3)(C)(i)(I)) or "urgent and compelling circumstances" (31 U.S.C. § 3553(d)(3)(C)(i)(II)). *EOD Tech., Inc. v. United States*, 82 Fed. Cl. 12, 19-20 n.8 (2008); *Superior Helicopter LLC, supra,* 78 Fed. Cl. at 188-89 n.16; *cf. Reilly's Wholesale Produce,* 73 Fed. Cl. at 711 n.10. *See also, Advanced Sys Dev., Inc. v. United States*, 72 Fed. Cl. 25 (2006) (applying factors in a "best interests" stay override case) and *CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100 (2006) (also applying factors in a "best interests" stay override case).

### 2. DOL Has Failed to Consider Several Important Aspects of the Problem – Namely – Factors 2, 3 and 4 Outlined by This Court in Prior Stay Override Cases

On its face, DOL's Findings and Determination document in this case focuses on only one factor: DOL's desire to complete the NCFMS implementation and "go live" by October 1,2009. The DOL document does not consider any alternatives to overriding the stay – including the alternative of continuing to process live data in DOLAR$. The document does not consider the costs and other fallout should Deloitte prevail before the GAO. Nowhere does the agency mention, or even acknowledge, the impact that its decision will have on the competitive system.

For these reasons, DOL has "entirely failed to consider [several] important aspect[s] of the problem – that is, three of four mandatory factors. Consequently the decision is arbitrary, capricious and contrary to law. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

As respects DOL's total failure to consider factors 2 through 4 in the override analysis, the case is exactly like *CIGNA Gov't Servs., supra*. There, Judge Williams found the Department of Health and Human Services' override of an automatic stay to be arbitrary and capricious because the agency had wholly failed to address "the risks to the Medicare contracts in the event GAO should sustain the protest," "the costs associated with undoing the transition work if GAO orders a recompetition" and "costs of terminating the new contracts and potentially retransitioning different contractors." 70 Fed. Cl. at 101. Judge Williams also found that the HHS override nowhere considered "the statutory mandates for competition" or "the adverse impact on competition that the override could effect." *Id.* at 102. This Court should do likewise here and require that the Congressionally mandated stay of performance be reinstated.

**3. DOL's Assertion that the Automatic Stay Jeopardizes its Desired October 1, 2009 "Go-Live" Date for the NCFMS Lacks Evidentiary Support in the Record.**

The essence of the DOL override here is the argument that the NCFMS must go live and become the DOL's financial management system of records by October 1, 2009. On that basis, presumably, DOL would contend that "significant adverse consequences" will occur if the automatic stay remains in place.

This Court has not hesitated to go behind an agency's arguments regarding adverse consequences and to determine whether the record contains supporting evidence. Thus, in *CIGNA Govt Servs., supra*, Judge Williams found that an unacceptable delay argument quite similar to the one DOL makes here lacked substance in view of the agency's own public admissions that it deadlines were "flexible." 70 Fed. Cl. at 101, 111. In *Superior Helicopter, supra*, Judge Lettow rejected the Forest Service's argument that adverse consequences would result from an automatic stay, finding no evidence or logic to support the Government's assertion that only one type of contract could solve the Government's need for aircraft to fight forest fires. 78 Fed. Cl. at 190. Similarly, in *Reilly's Wholesale Produce, supra*, Judge Allegra rejected the Defense Commissary Agency's argument that adverse consequences of observing an automatic stay would include the potential unavailability of fresh fruits for commissary patrons because of a lack of agency support staffing. 73 Fed. Cl. at 712-13. Judge Allegra found that no evidence supported the argument. *Id.*

Here DOL's Determination and Findings document does not state that delay stemming from the automatic stay is a certainty. Rather, DOL postulates that "any delay will cause significant risk to meeting the October 2009 deadline." Compl. Exh. A, Determination ¶1.a at unnumbered page 2. DOL's override conveniently ignores the admitted fact that, regardless

when the NCFMS is implemented and "goes live," DOLAR$ will continue to operate in parallel for at least six months. Compl. ¶¶ 4, 12, 29 and Compl. Exh. C at Bates 00001, 00005.

Reduced to its seeming essential, DOL's argument is that it prefers to go live with the NCFMS on October 1, 2009, even though DOLAR$ will remain functional and in full parallel operation. In other words, the agency simply prefers to override the stay rather than await GAO's Decision. As discussed above, DOL's preference is irrelevant and cannot form the basis of a proper decision under the applicable law and standard of review. *See Advanced Sys. Dev., Inc. v. United States*, *supra* at 31 (agency preference to override rather than await GAO is "irrelevant.")

**D. Deloitte will be Irreparably Injured Without the Requested Injunctive Relief.**

"A party suffers irreparable harm when there is no adequate remedy at law." *CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 575 (2004) (citing *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 744 (2000)), *aff'd*, 163 Fed. App'x 853 (Fed. Cir. 2005). In *Reilly's Wholesale Produce, supra*, Judge Allegra found the requisite irreparable harm resulting from the intuitively obvious problem of the contract awardee, during the pendency of a GAO Bid Protest, gaining traction with the agency as the contact work gets underway. Irreparable harm of this kind amounts to a competitive disadvantage that might not be remedied, causing the protester to lose important business. 73 Fed. Cl. at 716-17. Similarly, in *PBGA LLC*, Judge Allegra found the irreparable injury prong satisfied where the protester would incur a competitive disadvantage stemming from the awardee's performance of the contested contract pending GAO's decision. 57 Fed. Cl. at 664.

Prior decisions of this Court have also made it clear that a protestor is irreparably harmed by its inability to recover anticipated profits where another offeror improperly performs the

contested contract. *Essex Electro Eng'rs, Inc. v. United States*, 3 Cl. Ct. 277, 287 (1983); *Hawaiian Dredging Constr. Co.*, 59 Fed. Cl. at 317. "This type of loss, deriving from a lost opportunity to compete on a level playing field for a contract, has been found sufficient to prove irreparable harm." *Serco, Inc.*, 81 Fed. Cl. at 502.

Here likewise, absent reinstatement of the automatic stay Deloitte's competitive position will be significantly and irreparably damaged by GCE being "on the ground" and in place at DOL, thereby gaining an important inside competitive advantage. Moreover, Deloitte will lose potential profits that cannot be recovered in an action at law, thereby causing further irreparable harm to Deloitte.

**E. <u>The Balance of Hardships Favors Issuance of the Requested Injunctive Relief.</u>**

Review of whether the balance of hardships leans in a plaintiff's favor requires consideration of the harm to the Government and any intervenor. *Reilly's Wholesale Produce*, 73 Fed. Cl. at 715.

The arbitrary and capricious nature of the contested Government action is also to be considered in balancing the relative harms to the parties. *See Serco, Inc.*, 2008 WL 623803, at *33 (finding that balance of hardships leaned in plaintiff's favor where, among other reasons, any delay or administrative burden associated with setting aside the awards were of defendant's own making); *Hawaiian Dredging Constr. Co.*, 59 Fed. Cl. at 317 (comparing the hardships of an injunction and concluding the Government and intervenors were not harmed by "aborting a flawed award process"). Here, the balance of hardships clearly favors issuance of the requested injunctive relief.

Neither the Government nor GCE will be significantly harmed by a stay of Contract performance here. First, as to GCE, the awardee, at present it hold the Contract and if Deloitte's

Bid Protest is denied with a stay in place, under Federal Acquisition Regulation Clause 52.233-3, "Protest After Award (AUG 1996)," which the Contract incorporates by reference, GCE's costs will be covered. As for the Government, any harm flows only from the fact that the Court would be directing that DOL reinstate the automatic stay, which as we have argued is required in any event by 31 U.S.C. § 3553.

### F. **<u>The Public Interest Favors Issuance of the Requested Injunctive Relief</u>**

The public interest is served by insuring that a procurement process conforms to applicable procurement regulations and that contract awards are made reasonably rather than arbitrarily and capriciously. As this Court has stated:

> The public's interest is clearly served when suppliers engage in fair and robust competition for government contracts. Healthy competition ensures that the costs to the taxpayer will be minimized. Additionally, granting this injunction will ensure that this procurement is conducted according to all applicable procurement laws and regulations. In turn, by upholding the integrity of the procurement process, "public confidence and competition in the federal procurement process will be preserved."

*SAI Indus. Corp. v. United States*, 60 Fed. Cl. 731, 747 (2004) (citations omitted); *see Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1152-53 (Fed. Cir. 1994); *Essex Electro Eng'rs, Inc. v. United States*, 3 Cl. Ct. 277, 288 (1983).

Here, the public's interest in preserving the integrity of the competitive procurement process is particularly acute given the potential eight-figure contract value. The public interest is

best served by reinstating the automatic stay and allowing the GAO's Bid Protest procedures to operate with the status quo intact – as Congress intended.

## IV. CONCLUSION

Having fulfilled all requirements for injunctive relief, Deloitte respectfully requests that the Court grant its Application for Temporary Restraining Order and its Motion for Preliminary Injunction, such that performance of the Contract will be stayed while GAO resolves Deloitte's Bid Protest on the merits.

Respectfully submitted,

Dated: July 8, 2008

William W. Goodrich, Jr.
Arent Fox LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
202.857.6094 (Direct)
202.857.6395 (FAX)
goodrich.bill@arentfox.com

Attorney of Record for Plaintiff
Deloitte Consulting LLP

Of Counsel:

Richard J. Webber
Lisa K. Miller
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
202.857.6000
202.857.6395 (FAX)