U.S. Department of Labor

Office of the Chief Financial Officer
Washington, D.C. 20210

July 14, 2008

MEMORANDUM TO: LISA FIELY
Deputy Chief Financial Officer

FROM: John M. Blair
Associate Deputy CFO

SUBJECT: Response to Deloitte Protest – Adverse Consequences

This memorandum addresses one of the various factors that the Court of Federal Claims has considered when reviewing an agency's decision to override an automatic stay of a federal procurement resulting from a bid protest. Specifically, this memorandum addresses factor number 1 articulated in *Superior Helicopter LLC v. United States,* 78 Fed. Cl. 181: whether significant adverse consequences would occur if the agency did not override the stay.

Unless the stay is overridden, the Department of Labor (DOL) will incur significant adverse programmatic and financial consequences by not achieving a significant objective of replacing the current core financial management system by October 1, 2009. At least a one-year delay in implementation can be expected, exposing the Department to continued risks and increased cost to mitigate those risks.

Background

Currently, the DOL's financial management functions, processes, and activities are distributed across multiple information systems and financial applications, all centered on the Department of Labor Accounting and Related Systems (DOLAR$) mainframe accounting system. DOLAR$ has been in service since 1989 and has been both enhanced and extended to meet Departmental and external requirements. While DOLAR$ has served DOL well over its history and continues to exceed its intended useful life, the DOLAR$ technology is antiquated and no longer able to efficiently and effectively meet DOL's financial management requirements. DOLAR$ was implemented prior to all of the modern day laws and regulations that drive Federal accounting, financial management systems, financial management reporting and security, such as: the Chief Financial Officers Act of 1990, the Government Performance and Results Act of 1993, the Federal Financial Management Improvement Act of 1996, the Reports Consolidation Act of 2000, and the Federal Information Security Management Act (FISMA) of 2002.

DOL planned this acquisition, further, in compliance with all applicable financial systems regulations and guidance. DOL planned to migrate from DOLAR$ to a new core financial management system hosted at either an OMB-designated Federal Financial Management Shared Service Provider (FM SSP) or an approved commercial FM SSP, in accordance with OMB

policy[1]. OMB is the Executive Sponsor of the Financial Management Line of Business (FMLOB), a Federal Government-wide initiative to improve federal financial management by leveraging common standards and shared solutions and fostering efficiencies in Federal financial management. OMB executes their Executive Sponsor role via the Financial Systems Integration Office (FSIO), which has direct responsibility for completing FMLOB priority projects. One FMLOB project is the migration of agency financial management systems from legacy Department systems (such as DOL's DOLAR$) to a federal or a commercial FM SSP. FSIO's Migration Planning Guidance (Attachment A), for that project, was the foundation of our acquisition activity for NCFMS.

DOL released on January 15, 2008, Request for Proposal (RFP) DOL089RP20497 on Federal Business Opportunities (FBO) for the purpose of obtaining the services of a FMLOB Shared Service Provider (SSP) to modernize DOL's core financial functions to the New Core Financial Management System (NCFMS). In response to this RFP, DOL initially received nine proposals on the RFP closing date of March 7, 2008. One of these proposals was ultimately withdrawn, and two others were later eliminated due to DOL being notified of the inability of FSIO to certify Oracle Federal Financials Release version 12 software within DOL's required timeframe to make an award, leaving six proposals in the competition. After detailed evaluation, DOL selected and issued an award to GCE on June 26, 2008. Deloitte Consulting LLP filed a bid protest with the Government Accountability Office (GAO) (B-400319.1) on June 30, 2008.

<u>Clearly Established Due Date for Implementation</u>

Within the RFP, DOL provided a Statement of Objectives (SOO) that communicated the required objectives and the required state of the proposed service. The SOO (Attachment B) is clear in its stated objective that the system must be completed by October 1, 2009 (the beginning of the federal fiscal year) as follows:

Section 1.3 Constraints (bullet 3) – page 4

- The New Core Financial Management System must be deployed as the financial system of record on October 1, 2009.

Section 2.3 Integration Services – page 6

The FM SSP shall provide all necessary services for the successful integration of a FSIO-compliant core financial system, which shall include, at a minimum, the services described in the following sections.

Section 2.3.1 Implementation Approach

- The current timeline of the NCFMS investment calls for the implementation effort to begin in the fourth quarter of Fiscal Year (FY) 2008 and for the new financial system to achieve full operational capability in a hosted environment by October 1, 2009.

[1] OMB Memorandum, subject: Competition Framework for Financial Management Lines of Business Migrations, dated May 22, 2006.

> Full operational capability is defined as the NCFMS becoming DOL's financial system of record, with all core financial transactions, batch or on-line, being done in NCFMS.

Accordingly, this implementation approach would result in the DOLAR$ system being used for the completion of the FY 2009 financial reporting cycle. DOL's FY 2009 financial statements that are due to OMB by November 15, 2009 would be produced entirely from DOLAR$. Similarly, all other FY 2009 government-wide financial reporting would be produced from DOLAR$ that would require the system to be operational with FY 2009 financial data through mid-January 2010. After that, decommissioning (retirement of the system) of DOLAR$ could begin. However, all FY 2010 financial transactions would be processed in the NCFMS beginning October 1, 2009.

Further, the SOO contained within Section 1.0 Introduction, "Of particular applicability is the OMB's Competitive Framework for Financial Management Line of Business (FMLoB) Migrations, dated May 22, 2006, and the FSIO migration planning guidance." The FSIO Migration Planning Guidance (Attachment A) provides best practices for successful implementations and specifically with respect to implementation or "go-live" dates states on page 3,

> *The migration has a "go-live" date of October 1, with user training continuing to occur after the go-live date.*

Again on page 25, under the section for Migration/Implementation Complete Sub-Phase it states,

> *The migration/implementation is complete after the new system is brought up for users. To minimize risks associated with Annual Close, the new system should be brought up at the beginning of the new fiscal year on October 1 or shortly thereafter.*

As part of the Operational Capability Demonstration (OCD), each vendor was asked question number 176 – What is the latest date the project could start without impacting the October 1, 2009 operational date. In Deloitte's May 23, 2008 Answers to Attachment 3 Questions (Attachment C), page 8 contains the following:

> 176 – What is the latest start date we could have without impacting the October 1, 2009 operational date?
>
> Response:
> August 1, 2008 is the latest date to start this program without impacting the October 1, 2009 operational date. Deloitte Consulting's past experience indicates the likelihood of failure increases as you compress the implementation timeline beyond this point.

Deloitte's response indicates clearly they understood our SOO requirement for implementation by October 1, 2009. Deloitte acknowledged and identified the latest start date to achieve our objectives and supported through their own consulting experience that compression of the implementation schedule increases "the likelihood of failure." Further, each bidder, including Deloitte, was informed in the SOO that DOL identified the FSIO guidance "of particular importance."

Impact of Not Overriding the Stay

Unless the stay is overridden, the Department can expect delays that would prevent work from occurring until past the due date to reasonably expect to implement NCFMS by October 1, 2009. This position is further supported by the selected vendor's timeline. GCE, the selected vendor, also stated in its response (Attachment D) to question number 176 that "...this project could start as late as 1 month later than the planned start date – i.e. August 4, 2008." In short, a minimum period of 14 months of continuous work is necessary for a successful implementation of NCFMS. Unless the vendor is allowed to work continuously, starting by August 4, 2008, NCFMS cannot be implemented by October 1, 2009.

Given that, if work is not continuously being performed by August 4, 2008 the Department would have two options: 1) wait for the GAO decision to be rendered on Deloitte's protest and once resolved, restart the project, with the earliest implementation most likely being October 1, 2010; or 2) proceed against FSIO guidance and industry best practices (addressed in Factor 2 – Reasonable Alternatives paper) and accept the major risks of a mid-fiscal year implementation. As explained below, either option causes the Department severely adverse consequences. Option 2 is not viable and is discussed fully in a separate memorandum addressing another factor to consider in overriding a bidder protest – whether reasonable alternatives to the override were available.

Impact of Option 1

The Department will continue to be exposed to FISMA and FISCAM findings[2] that increase the risk of operations of DOLAR$. As stated previously, DOLAR$ is an old COBOL based mainframe system that has continued well past its intended useful life. As defined in OMB Circular A-11 under Part 7, entitled Planning, Budgeting, Acquisition, and Management of Capital Assets, OMB does not either fund or allow any development, modernization or enhancement of existing financial systems (e.g. DOLAR$) throughout the Federal government. Rather, OMB expects investments or system modernizations to be achieved through the FMLoB initiative, e.g. NCFMS. Accordingly, DOL minimizes risk through additional security measures that are very costly. In FY 2008, DOL will incur $680,000 to mitigate security related risks that would otherwise be addressed by migrating to the NCFMS. Staying on DOLAR$ for any additional period of time causes DOL to incurring these expenses.

DOL has additional risks associated with continuing the operation of DOLAR$. Specifically, there are separation of duties[3] issues with the performance of various information support

[2] The Federal Information Security Act (FISMA) of 2002 bolsters computer security within the Federal government by mandating yearly audits. The Federal Information Systems Controls Audit Manual (FISCAM), issued by the Government Accountability Office, provides guidance and audit procedures to IT auditors. Reviews or audits conducted result in findings, which if negative in nature, result in recommendations by the auditors to the Federal agency with the expectation that corrective actions will be taken to eliminate the finding.

[3] Separation of duties (SoD) is one of the key concepts of internal control and is the most difficult and sometimes the most costly one to achieve. In essence, SoD implements an appropriate level of checks and balances upon the activities of individuals, thus protecting federal funds and financial systems against fraud and misuse.

functions. DOL's Office of the Chief Financial Officer does not have the resources available within its annual budget to remedy the separation of duties situation by hiring more IT staff. The annualized costs to hire the additional IT staff would be about $655,000. DOL OCFO applied for and was granted a waiver (Attachment E, page 4) from the requirements of the DOL Computer Security Handbook based on NCFMS being implemented by October 1, 2009. Prolonging the implementation of NCFMS could cause this waiver to be withdrawn by DOL's Office of the Chief Information Officer.

Finally, DOL has received numerous FISMA and FISCAM findings, as discussed above, (Attachment F) to which DOL has developed plans of actions and milestones (POAMs) to mitigate these findings. Unfortunately, DOL OCFO does not have the necessary resources (staff and funds within our budget) to complete all of these POAMs and most, if not all, are waiting for the implementation of NCFMS as the means to eliminate the POAM. Delays to NCFMS will prolong DOL's exposure to these risks.

Conclusion

Unless the stay is overridden, the Department of Labor (DOL) will incur significant adverse programmatic and financial consequences by not achieving a significant objective of replacing the current core financial management system by October 1, 2009. At least a one-year delay in implementation can be expected exposing the Department to continued risk and increased cost to mitigate those risks.