PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

U.S. Department of Labor

Office of the Chief Financial Officer
Washington, D.C. 20210

July 14, 2008

MEMORANDUM TO: LISA FIELY
Deputy Chief Financial Officer

FROM: John M. Blair
Associate Deputy CFO

SUBJECT: Response to Deloitte Protest – Reasonable Alternatives

This memorandum addresses one of the various factors that the Court of Federal Claims has considered when reviewing an agency's decision to override an automatic stay of a federal procurement resulting from a bid protest. Specifically, this memorandum addresses factor number 2 articulated in *Superior Helicopter LLC v. United States,* 78 Fed. Cl. 181: whether reasonable alternatives to the override were available.

Background

Currently, the DOL's financial management functions, processes, and activities are distributed across multiple information systems and financial applications, all centered on the Department of Labor Accounting and Related Systems (DOLAR$) mainframe accounting system. DOLAR$ has been in service since 1989 and has been both enhanced and extended to meet Departmental and external requirements. While DOLAR$ has served DOL well over its history and continues to exceed its intended useful life, the DOLAR$ technology is antiquated and no longer able to efficiently and effectively meet DOL's financial management requirements. DOLAR$ was implemented prior to all of the modern day laws and regulations that drive Federal accounting, financial management systems, financial management reporting and security, such as: the Chief Financial Officers Act of 1990, the Government Performance and Results Act of 1993, the Federal Financial Management Improvement Act of 1996, the Reports Consolidation Act of 2000, and the Federal Information Security Management Act (FISMA) of 2002.

DOL planned this acquisition, further, in compliance with all applicable financial systems regulations and guidance. DOL planned to migrate from DOLAR$ to a new core financial management system hosted at either an OMB-designated Federal Financial Management Shared Service Provider (FM SSP) or an approved commercial FM SSP, in accordance with OMB policy[1]. OMB is the Executive Sponsor of the Financial Management Line of Business (FMLOB), a Federal Government-wide initiative to improve federal financial management by leveraging common standards and shared solutions and fostering efficiencies in Federal financial management. OMB executes their Executive Sponsor role via the Financial Systems Integration Office (FSIO), which has direct responsibility for completing FMLOB priority projects. One FMLOB project is the migration of agency financial management systems from legacy

[1] OMB Memorandum, subject: Competition Framework for Financial Management Lines of Business Migrations, dated May 22, 2006.

PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Department systems (such as DOL's DOLAR$) to a federal or a commercial FM SSP. FSIO's Migration Planning Guidance, for that project, was the foundation of our acquisition activity for NCFMS.

DOL released on January 15, 2008, Request for Proposal (RFP) DOL089RP20497 on Federal Business Opportunities (FBO) for the purpose of obtaining the services of a FMLOB Shared Service Provider (SSP) to modernize DOL's core financial functions to the New Core Financial Management System (NCFMS). In response to this RFP, DOL initially received nine proposals on the RFP closing date of March 7, 2008. One of these proposals was ultimately withdrawn, and two others were later eliminated due to DOL being notified of the inability of FSIO to certify Oracle Federal Financials Release version 12 software within DOL's required timeframe to make an award, leaving six proposals in the competition. After detailed evaluation, DOL selected and issued an award to GCE on June 26, 2008. Deloitte Consulting LLP filed a bid protest with the Government Accountability Office (GAO) (B-400319.1) on June 30, 2008.

Beginning of Fiscal Year Implementation

The DOL has clearly established that it plans to implement the NCFMS at the beginning of the fiscal year. DOL established this in the SOO and discussed this implementation date being the beginning of the fiscal year in a supporting memorandum that addresses Factor 1 – Adverse Consequences. As discussed in that memorandum, an option to not implementing by October 1, 2009 would be a mid-year implementation. DOL does not consider this a viable option given industry best practices, demonstrated impact to other Federal agencies who have implemented at mid-year, and Federal government guidance.

Industry Best Practice

Industry best practices are expressed within a recent article from the *Journal of Government Financial Management*, Summer 2007, authored by John H. Hummel, CGFM, CPA, CFE, and Diane L. Dudley, CGFM, CPA, entitled, "Keep That Opinion" (Attachment A). Of particular interest to DOL is that both are partners of KPMG, the firm that renders an audit opinion on DOL's annual financial statements[2]. Further, Diane L. Dudley is the Managing Partner for the DOL audit engagement. This is a particularly salient point in that it provides insight into the mindset of DOL's financial statement auditors who will need to be involved in the process of opining on the end results of DOL's implementation of NCFMS.

In the article, one of the significant points made by the authors is to avoid mid-year implementations. On page 34 it states, "Implementing a new core financial system presents a major challenge to maintaining an unqualified audit opinion." That statement is supported by the chart (page 34) displaying the Department of Energy and the National Aeronautics and Space Administration, both of which had unqualified audit opinions in the year before their system implementations. After both Federal agencies initiated mid-year system implementations, both

[2] The Chief Financial Officers Act of 1990, as amended by the Government Management Reform Act of 1994, requires the major 24 agencies of the Federal Government to prepare and submit audited financial statements. Agencies audited financial statements are due to the Office of Management and Budget 45 days after the close of the fiscal year which is generally November 15 unless that day is over a weekend.

PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

lost their unqualified audit opinions. The associated reason given for the decline in the audit opinion was system conversions (implementations).

The article on page 35 specifically states:

> Mid-year system implementations should generally be avoided as they create two different operating/control environments which in turn roughly doubles the amount of control testing the auditors must do in the annual audit. Further, if issues arise after a mid-year implementation, little time remains to correct these issues prior to year-end.

To illustrate the potential impact to both the preparers and auditors of the financial statements consideration needs to be given to the magnitude of DOL's financial position as measured by its financial statements and the number and dollar value of financial transactions associated with DOL's financial reporting. DOL's overall financial position and financial reporting responsibility is huge. For FY 2007:

- DOL's consolidated balance sheet that reports assets, liabilities and net position totals $92.8 billion; the consolidated statement of net cost of operations totals $48.3 billion; and the annual appropriations received from Congress total $56.9 billion.

- DOL processed 16.1 million financial transactions in DOLAR$, and for FY 2008 through May 2008, DOL processed 9.7 million financial transactions in DOLAR$. The average monthly financial transactions processed during that 20 month period of time is 1.3 million.

Even if someone is unfamiliar with what all these financial terms and numbers may mean to accountants and readers of financial statements, it is clearly evident that with the magnitude of the financial statement reporting numbers and the shear volume of the number of financial transactions that are processed by the financial system on a monthly basis, any added risk to the system implementation should not even be considered. Further, mid-year implementations increase the complexities with preparing the financial statements and auditing the financial statements which not only doubles the work and associated cost of the auditors, but significantly increases the work and associated cost of the preparer of the financial statements. So not only does risk increase with mid-year systems implementations, but costs associated with the additional work are incurred as well.

<u>Impact to Other Federal Agencies</u>

The Department of Energy had a mid-year implementation of a new financial accounting system in April 2005. This mid-year implementation was identified in the auditor's report (Attachment B) which stated on page 244 "…the Department encountered a significant number of conversion, posting, reconciliation, and reporting issues that hindered its ability to assure the accuracy and completeness of consolidated financial statement balances and to provide the data necessary for audit testing…" Accordingly, as a direct result of this condition and others, KPMG issued a disclaimer of an audit opinion on the Department of Energy's FY 2005 financial statements.

PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Further, in their corresponding report on material weaknesses in DOE's financial management and reporting controls, KPMG stated on page 252, "[w]hile the Department conducted extensive STARS pre-deployment testing, it encountered implementation issues related to converting data from its legacy accounting system, developing new accounting processes to effectively use the new system, and identifying related reporting requirements. The Department's new financial and accounting services organization was unable to fully address many of these implementation issues prior to September 30, 2005." The lesson learned from this implementation was that because of the mid-year conversion, DOE's ability to address issues encountered and implement resolutions was greatly hindered by the shortened timeframe between the cutover to the new system and fiscal year end.

A fiscal year end cutover allows the agency the maximum amount of time to address issues and implement resolutions, thus minimizing the risk of jeopardizing DOL's streak of consecutive clean audit opinions to the greatest extent possible. Again, this same point is supported by the previous article referenced in Attachment A, page 35 which states, "[f]urther, if issues arise after a mid-year implementation, little time remains to correct these issues prior to year-end."

Federal Government Guidance

The Financial Management Line of Business (FMLOB) has issued guidance to Federal agencies on the suggested implementation date of financial systems. The FMLOB Migration Planning Guide (Attachment C) contains this statement on page 3: "The migration has a 'go-live' date of October 1, with user training continuing to occur after the go-live date." Further, on page 25, the Guidance states, "The migration/implementation is complete after the new system is brought up for users. To minimize risks associated with Annual Close, the new system should be brought up at the beginning of the new fiscal year on October 1 or shortly thereafter."

Further, FMLOB Migration Guidance on Page 3 states, "[a] single migration will occur. The migration will not be phased or require parallel operations." And within the footnote on page 3 the FMLOB guidance states, "[p]arallel operations is the process whereby the agency continues to operate their old financial system concurrently with the new financial management system for a specific period of time or until the agency has a level of confidence in the new financial system operations. Parallel operations require planning and coordination to minimize potential risks. Processing transactions in both systems is required and can be a burden on an organizations workforce…" The current NCFMS implementation plan is to not having any parallel operations between DOLAR$ and NCFMS for the same fiscal year processing of financial transactions. The NCFMS implementation plan is to use DOLAR$ for a limited function. DOLAR$ will run until the FY 2009 financial reporting cycle is complete (e.g audited financial statements due to OMB by November 15, 2009 and input to the Governmentwide financial statements, December 2009) and for NCFMS to begin processing all FY 2010 financial transactions immediately in October 2009. As discussed previously above, DOLARS processes about 1.3 million financial transactions per month. To process that amount of financial transactions in both DOLAR$ and NCFMS under parallel operations would certainly be a burden to DOL accounting staff and increase the overall risks.

Impact to DOL on Failed Mid-year Implementation

PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

If DOL attempted mid-year implementation and encounter problems some of the specific impacts of that failed effort could significantly harm DOL for several years. First, DOL would most-likely loose its unqualified audit opinion that it has had for many years. Corrective actions necessary to overcome the failed effort would start with the need to reconcile the financial data between the two systems. As discussed previously, DOL generates about 1.3 million financial transactions per month. This effort alone could impact DOL for more than one year. The cost associated with data cleanup and reconciliation would be huge and not something we have planned for in terms of budgetary resources necessary to perform the work.

As a final thought and example, DOL would not want to encounter what happened to NASA. NASA has not received an unqualified audit opinion on its financial statements since its mid-year implementation to new accounting system in FY 2003 – 5 years ago. NASA is still dealing with the data cleanup and reconciliation from a failed system implementation. DOL is not interested in incurring that risk.

Conclusion

DOL does not consider a mid-year system implementation to be a viable option, given industry best practices, the demonstrated negative impact on other Federal agencies who have implemented at mid-year, and Federal government guidance that specifically advises against it. A mid-year implementation has been shown to have too many negative impacts for success, such as increased risk to the system implementation as well as maintaining an unqualified audit opinion, and an increased work load for financial statement preparation and audit, as well as an increase in the costs associated with those activities.