PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**U.S. Department of Labor**

Office of the Chief Financial Officer
Washington, D.C. 20210

July 14, 2008

MEMORANDUM TO: LISA FIELY
Deputy Chief Financial Officer

FROM: Kenneth E. Bode *Kenneth E Bode*
Director, Systems Architecture and Development
Project Manager, NCFMS

SUBJECT: Response to Deloitte Protest – Benefits of Overriding Stay Compared to Potential Cost of Override

This memorandum addresses one of the various factors that the Court of Federal Claims has considered when reviewing an agency's decision to override an automatic stay of a federal procurement resulting from a bid protest. Specifically, this memorandum address factor number 3 articulated in *Superior Helicopter LLC v. United States,* 78 Fed. Cl. 181: how the benefits of overriding the stay compared to the potential cost of the override, including the costs associated with the potential that the protestor might prevail before the Government Accountability Office (GAO).

Background

Currently, the DOL's financial management functions, processes, and activities are distributed across multiple information systems and financial applications, all centered on the Department of Labor Accounting and Related Systems (DOLAR$) mainframe accounting system. DOLAR$ has been in service since 1989 and has been both enhanced and extended to meet Departmental and external requirements. While DOLAR$ has served DOL well over its history and continues to exceed its intended useful life, the DOLAR$ technology is antiquated and no longer able to efficiently and effectively meet DOL's financial management requirements. DOLAR$ was implemented prior to all of the modern day laws and regulations that drive Federal accounting, financial management systems, financial management reporting and security, such as: the Chief Financial Officers Act of 1990, the Government Performance and Results Act of 1993, the Federal Financial Management Improvement Act of 1996, the Reports Consolidation Act of 2000, and the Federal Information Security Management Act (FISMA) of 2002.

DOL planned this acquisition, further, in compliance with all applicable financial systems regulations and guidance. DOL planned to migrate from DOLAR$ to a new core financial management system hosted at either an OMB-designated Federal Financial Management Shared Service Provider (FM SSP) or an approved commercial FM SSP, in accordance with OMB policy[1]. OMB is the Executive Sponsor of the Financial Management Line of Business (FMLOB), a Federal Government-wide initiative to improve federal financial management by

---

[1] OMB Memorandum, subject: Competition Framework for Financial Management Lines of Business Migrations, dated May 22, 2006.

PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

leveraging common standards and shared solutions and fostering efficiencies in Federal financial management. OMB executes their Executive Sponsor role via the Financial Systems Integration Office (FSIO), which has direct responsibility for completing FMLOB priority projects. One FMLOB project is the migration of agency financial management systems from legacy Department systems (such as DOL's DOLAR$) to a federal or a commercial FM SSP. FSIO's Migration Planning Guidance, for that project, was the foundation of our acquisition activity for NCFMS.

DOL released on January 15, 2008, Request for Proposal (RFP) DOL089RP20497 on Federal Business Opportunities (FBO) for the purpose of obtaining the services of a FMLOB Shared Service Provider (SSP) to modernize DOL's core financial functions to the New Core Financial Management System (NCFMS). In response to this RFP, DOL initially received nine proposals on the RFP closing date of March 7, 2008. One of these proposals was ultimately withdrawn, and two others were later eliminated due to DOL being notified of the inability of FSIO to certify Oracle Federal Financials Release version 12 software within DOL's required timeframe to make an award, leaving six proposals in the competition. After detailed evaluation, DOL selected and issued an award to GCE on June 26, 2008. Deloitte Consulting LLP filed a bid protest with the Government Accountability Office (GAO) (B-400319.1) on June 30, 2008.

Benefits of Overriding the Stay

Overriding the stay enables DOL to perform activities required to maintain its schedule to implement the new financial management system in October 2009. The risks and costs associated with the delay in deployment have been addressed in separate memoranda addressing factors 1 and 2. The activities being performed are in alignment with the DOL System Development Life Cycle Management (SDLCM) methodology and associated Work Breakdown Structure[2] (WBS), which were identified in the NCFMS solicitation. The SDLCM sets forth standard and logical business processes for managing information technology investments to assure that systems are developed to meet established customer requirements and support DOL critical success factors, such as implementing the NCFMS on time and on budget. The SDLMC provides for a disciplined and repeatable process that can be controlled, measured and documented. The SDLCM calls for work to be allocated in phases throughout the life of the investment and captured in the project's WBS.

The work being performed currently under the contract just awarded to GCE is in Phase 1 – Conceptual Planning, and is scheduled for completion by the second week of August at a cost of approximately $160,000. This initial effort (Phase 1) and associated cost provides the framework of the more detailed Planning and Requirements and Design phases to follow, and consistent with the intent of a SDLCM, would be reusable by any vendor in the event of an adverse decision by the GAO.

[2] Work Breakdown Structure is a fundamental tool commonly use in project management. It is a structure that permits summing of subordinate costs for the tasks, materials, etc. into their successively higher parent tasks, materials, etc. as well as providing a listing of all tasks to be completed to measure success against a timeline and overall costs.

PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Maintaining the schedule also maintains the credibility of the project's stakeholders; both internal and external to DOL. Considerable effort has been expended to develop a comprehensive and coordinated procurement and project management approach which applies lessons learned from the previous attempts to replace DOLAR$. Whenever a project of the magnitude of a department-wide replacement of a financial management system is unsuccessful, it is a serious concern with OMB. Under OMB Circular A-11, Part 7, Planning, Budgeting, Acquisition and Management of Capital Assets, OMB sets forth requirements for projects and agencies to follow. For DOL, the Chief Information Officer (CIO) organization has the responsibility and authority to manage the Department's Information Technology (IT) portfolio. The Capital Planning and Investment Control (CPIC) office under the CIO provides guidance and oversight for IT projects.

The NCFMS Project Management Office (PMO) has spent a considerable amount of time and effort working with the CPIC office to ensure the planning and acquisition documents are in compliance with the Department's and OMB's guidelines. This concerted effort has strengthened the credibility of the program with the CPIC office as well as with OMB. Performing according to established budgets and timelines are critical evaluation factors for both DOL and OMB and the current efforts of the NCFMS project help ensure we stay in alignment with agreed upon measures. Given the current budget constraints together with increasing demand for system resources, maintaining credibility within the budget approval and oversight hierarchy at OMB and within DOL is essential. Current DOL Office of the Chief Financial Officer (OCFO) management has worked hard to establish a good working relationship with DOL OCIO and OMB after it had deteriorated substantially under the previous OCFO management during the pervious attempt to implement a new core financial system known as LEAP. Strong agency and OMB support is critical to the success of this project. Currently, there is a high level of internal and external confidence which would likely deteriorate were there to be another work stoppage. Maintaining credibility with DOL OCIO and OMB is critical to the continued success of the NCFMS project because OCFO will enter into periodic (monthly or quarterly) progress reviews with both DOL OCIO and OMB, both of whom have the authority to stop a project.

<u>DOL Costs associated with the potential that the protestor might prevail before GAO</u>

In addition to the loss of time, there are a variety of known and potential costs that will be incurred by DOL should the protestor prevail before GAO. The first of these are the additional costs to DOL to reevaluate proposals. Many of the evaluators come from various agencies within DOL. It is a burden to the DOL agencies to make staff available to support this activity. DOL and its agencies must make adjustments to their already scarce staff resources to complete their own agency-specific tasks and responsibilities to participate in the source evaluation and selection process.

The second cost to be considered is the longer implementation period for the system due to missing the October 2009 implementation date. As discussed in the memorandum addressing Factor 2 – Reasonable Alternatives, a mid-year implementation is not a viable option. DOL would be compelled to push out the implementation date to at least October 2010. If DOL has to

PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

delay implementation for a minimum of one year, additional costs, including restarting the project with a different timeline and potential adverse impact to the PMO support, could occur.

While DOL is confident we have a solid and defensible procurement selection, other cost factors to consider in the event a new evaluation and selection must be performed are the additional administrative costs to the DOL as well as additional proposal costs for offerors. Depending on how long the process takes, it may not be economically feasible to keep the Program Management Office (PMO) in place, and the government could lose valuable accumulated program knowledge. Contractor staff supports the PMO. A year delay may require DOL to take some type of procurement action (e.g. suspension, termination, etc.) with the PMO support contractor in response to the time delay. Any type of suspension or termination could expose DOL to additional costs if the PMO support contractor were to then file a claim against DOL. Further, even if the PMO contractor files no claim, the contractor may have to reassign their staff to another project outside of DOL, and there is no guarantee DOL would get back the same contractor personnel who have the institutional knowledge of the NCFMS project.

Conclusion

Unless the stay is overridden, the Department of Labor (DOL) will lose a year's worth of benefits gained by replacing its current financial management system, and in the process, incur additional costs, program interruption and potential loss of contractor staff with institutional knowledge in how to help implement the NCFMS project.